THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| U.M.C. GLOBAL INC., Plaintiff, v. SIG SAUER INC., Defendant. | CASE NO. C26-1630-JCC ORDER |

This matter comes before the Court on Plaintiff U.M.C. Global Inc.'s ("UMC") motion to dismiss Defendant Sig Sauer Inc.'s ("Sig") counterclaims (Dkt. No. 21). Having thoroughly considered the briefing and the relevant record, the Court hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

This is a breach of contract dispute, following a manufacturing agreement between UMC and Sig. (*See generally* Dkt. No. 1.) UMC was to manufacture Sig-branded products. (*See id.* at 3–4.) To do so, UMC needed to acquire components not readily transferrable to its other contract manufacturing. (*See id.* at 6.) UMC thus entered into binding purchase agreements for supplies and/or components specific to Sig to meet Sig's forecasted demand. (*See id.* at 4–5.) Sig is alleged to have then breached the agreement by declining to purchase the agreed-upon amounts of finished products, leaving UMC with excess parts and/or finished product inventory (with

resulting costs and lost profits). (*See id.* at 6.)

UMC lodged its Complaint (Dkt. No 1), with the manufacturing agreement as an attached exhibit (*id.* at 12–18). Sig then lodged its Answer (Dkt. No. 16), which included counterclaims for trade secret misappropriation under both Washington's Uniform Trade Secrets Act ("WUTSA") and the federal Defend Trade Secrets Act ("DTSA"). (*See id.* at 10–19.) In that pleading, Sig alleged that UMC disclosed Sig's trade secrets by simply filing, without protective measures, its Complaint in this Court (as it contained references to their agreement and the agreement itself). (*See id.* at 15.) In support of this position, Sig cited to the agreement's confidentiality and consent-to-disclose terms. (*See id.*)

UMC now moves pursuant to Rule 12(b)(6) to dismiss Sig's trade secret counterclaims, arguing that (1) Sig fails to plead the counterclaims with sufficient particularity and, regardless, (2) it waived resulting protections by letting the record stay public as long as it has. (*See generally* Dkt. No. 17.)

## II. DISCUSSION

### A. Fed. R. Civ. P. 12(b)(6) Standard

A party may move for dismissal when a litigant "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the pleading must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the pleading includes factual content that allows the court to draw the reasonable inference the opponent is liable for the misconduct alleged. *Id.* at 678. Said another way, the pleading must provide grounds for entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Thus, when considering a Rule 12(b)(6) motion, the Court

must be able to conclude that the movant is entitled to judgment as a matter of law, even after accepting allegations as true and construing them in the light most favorable to the non-moving party. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). However, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

**B. Misappropriation**

According to Sig, it entrusted the following trade secrets to UMC:

> (1) rolling demand forecasts and unit volume projections for its ROMEO Zero product family; (2) its backorder and production volume data; (3) its approved vendor and component sourcing information (including components manufactured exclusively for [Sig] and usable in no other customer's products); (4), its cost and pricing information; and (5) its plans for unreleased products then in development (including non-public product-development plans, inventory requirements, and sourcing strategies).

(Dkt. No 16 at 13.) Sig claims UMC disclosed these secrets when it filed its Complaint with the agreement attached. (Dkt. No. 16 at 17.)

To state a claim under federal law for trade secret misappropriation, a party must allege that: (1) they owned a trade secret; (2) the opponent misappropriated the trade secret; and (3) the misappropriation caused some damage to the holder of that trade secret. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020). To that end, a trade secret[1] is information that (1) is not "readily ascertainable through proper means;" (2) "derives independent economic value" from its secrecy; and (3) the owner took "reasonable measures" to keep it secret. 18 U.S.C. § 1839(3); *see Inteliclear*, 978 F.3d at 657. Stated simply, a trade secret gives its owner a competitive edge because it is secret. *See generally id.* Thus, to withstand a motion to dismiss, the opponent must describe the protected subject matter with "sufficient

[1] The definition of trade secrets under the DTSA and WUTSA are substantively identical. *Compare* 18 U.S.C. § 1839(3), *with* RCW 19.108.010(4). Thus, the federal and state counterclaims can be resolved in one analysis.

particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade." *Id.* at 658.

In its opposition to UMC's motion, Sig asserts UMC misconstrued its claim by focusing only upon the agreement (rather than the information that agreement entailed, in light of UMC's allegations within its complaint), and that Sig identified its trade secrets with sufficient particularity in its Answer, as required under *Inteliclear*. (*See* Dkt. No. 19 at 7–8.) Correspondingly, Sig alleged in its Answer that UMC disclosed five categories of trade secrets: (1) product demand forecasts; (2) backorder and production data; (3) approved vendor and component sourcing information; (4) cost and pricing information; and (5) plans for unreleased products. (Dkt. No. 16 at 13.) Sig contends that requiring any more particularity now is a discovery issue, not a pleading requirement. (*See* Dkt. No. 19 at 8.)

To be clear, whether Sig needs to plead more specific facts is not the issue here. One purpose of pleading particular facts in a trade secrets case is to show that information at issue in a complaint is separate from "general knowledge in a trade or of special persons who are skilled in the trade." *Inteliclear*, 978 F.3d at 658. In the Court's view, UMC's pleading is devoid of *any* trade secrets. Fundamentally, the pleading reveals little more than (1) that Sig forecasted demand five years ago (*see* Dkt. No. 1 at 4); (2) provides generalized backorder and production volume data for a single product (*id.*); (3) denotes an approved vendor's name and notes components relevant to this case were exclusive to that vendor (*id.*); (4) indicates that the inventory described in the Complaint has monetary value (*id.* at 6–7); and (5) that Sig continued to develop new products (*id.* at 5).

Perhaps documents associated with these generalized facts could constitute trade secrets, but UMC did not disclose those documents. (*See generally* Dkt. No. 1.) Thus, there is no disclosure. *See Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 970 (C.D. Cal. 2011) (finding genuine issue of material fact where deponent testified "'he wouldn't consider the fact that Mattel does sale **forecasts** to be a **trade secret**.' However, that very witness continued that

'the way in which Mattel does those **forecasts** may be a **trade secret**.'") (emphasis in original). At bottom, there is little reason to believe here that Sig stands to lose its competitive edge if its competitors access the Complaint. What little information the Complaint and manufacturing agreement do contain simply reveal that Sig engages in commonplace logistics and product development practices, which a person with general knowledge would expect. This, alone, is insufficient to establish the existence of a trade secret, even if there are trade secrets involved in Sig's decision to use these processes.

Sig relies on *NW Monitoring LLC v. Hollander* to suggest otherwise. (*See* Dkt. No. 17 at 8) (citing 534 F. Supp. 3d 1329 (W.D. Wash. 2021)). But that case is distinguishable. *Hollander* dealt with customer pricing information the defendants allegedly took after leaving the plaintiff's employment. *See* 534 F. Supp. 3d at 1334–36. (W.D. Wash. 2021). That court, in turn, relied on *Ed Nowogroski Ins., Inc. v. Rucker,* to say that the plaintiff's "customer pricing information" was, in fact, a trade secret. *See Hollander*, 534 F. Supp. 3d at 1337 (citing 971 P.2d at 943–49 (Wash. 1999)). However, *Nogrowski*, dealt with whether *customer lists*, not pricing information. *See* 971 P.2d at 943. Regardless, trade secret protection still hinged on whether information on the customer list was readily ascertainable (such as in a phone book). *Id.* at 944. Thus, *Hollander* is inapposite.

Nor does Sig cite to other authority, under either Washington or federal law, standing for the proposition that generalized customer pricing information is, in fact, a trade secret. (*See generally* Dkt. No. 19.) Thus, Sig fails to establish the existence of this or any other trade secret disclosure. Information is not a trade secret just because a plaintiff says it is. This is the kind of conclusory allegation that *Iqbal* does not allow.

**C. Waiver**

UMC also argues that, even if Sig had properly pleaded the existence (and disclosure) of a trade secret, its unreasonable failure to seek its protection in this matter constitutes waiver. (*See* Dkt. No. 17 at 13.) Whereas Sig argues reasonableness is a fact question inappropriate for

resolution by a Rule 12(b)(6) motion. (*See* Dkt. No. 19 at 10.)

UMC relies on *Woo v. Fireman's Fund Ins. Co.* to support its argument that Sig waived trade secrets protection over the course of this litigation. (*See* Dkt. No. 17 at 13) (citing 154 P.3d 236, 241 (2007)). In *Woo*, the alleged trade secrets were disclosed by their owner during discovery under a protective order. 154 P.3d at 238. The defendant later moved *in limine* to exclude the trade secrets from admission at trial, which the court denied. *Id.* The trade secrets were entered into evidence without any further effort to protect them. *Id.* at 241. Finally, the trade secrets were sealed but only years after their disclosure in court. *Id.* The court later reversed the sealing order, though, holding that "unprotected use of confidential material at trial operates as a waiver of confidentiality." *Id.* at 242. The court was persuaded by *Littlejohn v. BIC Corp.*, which held that "failure to object to the admission into evidence of [confidential documents], absent a sealing of the record, constituted a waiver." 851 F.2d 673, 680 (3d. Cir. 1988). Admittedly, *Woo's* facts are distinguishable from the facts here, but the case is nonetheless persuasive. In both *Woo* and *Littlejohn*, the dispositive issue was the information owner's inactivity, <u>not</u> the stage of litigation where disclosure occurred.

Indeed, Sig must take "reasonable measures to keep [its trade secret] information secret." 18 U.S.C. § 1839(3)(A). This can take the form of confidentiality agreements and limitations on access (such as on a need-to-know basis). *See United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011). However, "allowing private information to become public, even through *carelessness*, precludes protection as a trade secret." *K.S. ex rel. Isserlis v. Ambassador Programs, Inc.*, 2010 WL 605274, slip op. at 7 (E.D. Wash. 2010) (emphasis in original). Thus, even if Sig had adequately pleaded the existence and disclosure of trade secrets here, its months of inaction (as described below) waive any claim to protection.

Sig has made no effort to protect its purported trade secrets since UMC filed the Complaint on May 13, 2026. In fact, Sig sought from the Court extensions of time to lodge its Answer on two occasions: June 5, 2026, (Dkt. No. 11) and again on July 21, 2026, (Dkt. No. 14).

Further, in what now seems an ironic twist, it averred at the time it sought to extend its deadline to answer that no party (including itself) would be prejudiced by such an extension. (*See* Dkt. Nos. 11 at 2, 14 at 2.) Thus, the secrets were public for over two months by the time Sig finally lodged its Answer, on July 31, 2026 (Dkt. No. 16.) Even now, over five months later, Sig *still* has not moved to protect its alleged trade secrets. Sig asserts that its requested extensions were meant to "explore settlement of this dispute." (Dkt. No. 19 at 3.) No matter how well-intentioned, Sig's lack of urgency waives any claim to trade secrets protection. No one could reasonably conclude that Sig took reasonable measures to keep the information in the Complaint secret without any effort to protect it.

In sum, the Court finds, as a matter of law, that UMC's pleadings *do not* contain information stated with sufficient particularity to constitute disclosed trade secrets and, even if they did, Sig, by not quickly acting to protect their disclosure, *waived* claims based on their disclosure.

## III. CONCLUSION

For the foregoing reasons, UMC's motion (Dkt. No. 17) is GRANTED. Sig's DTSA and WUTSA counterclaims are DISMISSED. This dismissal is with prejudice and without leave to amend as amendment would clearly be futile, given the legal findings above. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020).

DATED this 15th day of October 2026.

John C. Coughenour
UNITED STATES DISTRICT JUDGE